IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SEARS AUTHORIZED HOMETOWN STORES, LLC, § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 7:18-cv-00083-O -BP |
| § | |
| Y&O WF, LLC, § § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Before the Court are Y&O WF, LLC's ("Y&O") Supplemental Motion to Dismiss and Brief in Support (ECF No. 34) filed on June 25, 2018 and Motion to Dismiss Sears' Misappropriation of Trade Secrets Claim and Brief in Support (ECF No. 51) filed on August 3, 2018; Sears Authorized Hometown Stores, LLC's ("Sears") Response (ECF No. 56) filed on August 24, 2018; and Y&O's Reply (ECF No. 57) filed on September 6, 2018. United States District Judge Reed O'Connor referred this case to the undersigned for pretrial management by Order dated June 28, 2018 (ECF No. 36).

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** Y&O's Rule 12(b)(6) Supplemental Motion to Dismiss (ECF No. 34) and its Motion to Dismiss Sears' Misappropriation of Trade Secrets Claim (ECF No. 51).

**I.    BACKGROUND**

This is a commercial lease dispute involving Y&O, the landlord; Faith Retail, LLC ("Faith"), the tenant; and Sears, the supplier of inventory, equipment, and computer hardware and software to separately owned and operated Sears Hometown Stores. Y&O alleges that it leased

space in a shopping center in Wichita Falls, Texas to Faith ("the Property"), based on Sears' assurances that Faith's principal, Cheryl Lynn Warren ("Warren"), had been a successful Sears dealer in the past and would be a good tenant. (ECF No. 57 at 1).

The commencement date of the lease between Y&O and Faith was either December 1, 2017 or May 1, 2018, depending on which party's version of the facts proves correct. (ECF No. 49 at 2; ECF No. 52 at 11). Y&O allowed Faith to take possession of the Property in December 2017. (ECF No. 11 at 3). In anticipation of providing Faith with inventory and equipment to launch the store, Sears sent Y&O a UCC Financing Statement executed on January 30, 2018. (ECF No. 13 at 4). The Financing Statement stated that Sears had a security interest in the equipment and inventory that it would eventually provide to Faith's store. (ECF No. 14 at 4-5). In April 2018, Sears delivered to the Property various consumer appliances, tools, and lawn equipment (the "inventory"). (ECF No. 11 at 3). During mid-May 2018, Warren and Faith allegedly ceased operating the Sears store at the Property and never made monthly rental payments or paid any of the other charges due under the lease. (*Id.* at 3-4).

At some point in late May, Sears wrote to Y&O and requested access to the Property to retrieve its equipment, inventory, and confidential, personal, and other trade secret information. (ECF No. 13 at 3). Warren also informed Y&O that Sears owned certain equipment, inventory, and trade secret information located at the Property. (*Id.*). Y&O refused Sears access to the Property. (*Id.* at 4). Y&O admitted that the Property was "locked, wired to an alarm, and constantly monitored" until this case was resolved. (ECF No. 11 at 9). As of June 1, 2018, Y&O filed a Landlord Lien Affidavit in the Real Property Records of Wichita County, Texas setting forth the unpaid rent and other charges due from Faith at the time. (ECF No. 13 at 4). Through proceedings in this case, Sears and Y&O eventually agreed that Sears could enter the Property and obtain its

equipment, inventory, and confidential, personal, and trade secret information. (ECF No. 30). Sears now sues Y&O for conversion of its property, inventory, and trade secret information. (ECF No. 3 at 3-4). Sears further alleges that Y&O misappropriated its trade secrets. (*Id.* at 4-6).

Y&O seeks dismissal of Sears' claim for misappropriation of trade secrets under Rule 12(b)(6), arguing that "use" of a trade secret is a required element of a misappropriation claim under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rems. Code Ch. 134A (West 2015). (ECF Nos. 34 and 51). Sears responded that there is no requirement for pleading "use" under TUTSA, but even if there were, Sears properly alleged that Y&O used its trade secrets by refusing to return them to Sears. (ECF No. 56 at 10).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the Rules, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Accordingly, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a motion to dismiss, a Court must take the allegations in the Complaint as true and construe them in the light most favorable to the plaintiff. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 540 U.S. 544, 555-56 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

"Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### III. ANALYSIS

#### 1. There is No Requirement Under TUTSA to Allege "Use" of a Trade Secret.

Y&O's Supplemental Motion to Dismiss and Rule 12(b)(6) Motion to Dismiss Sears' Misappropriation of Trade Secrets Claim should be denied because, when viewing the facts in the light most favorable to Sears, Sears has alleged sufficient facts to state a plausible claim of misappropriation of trade secrets.

Under TUTSA, "'misappropriation' means [the] acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent . . . ." Tex. Civ. Prac. & Rem. Code § 134A.002(3) (West 2015). Y&O contends that the Fifth Circuit and this Court have interpreted TUTSA to require "use" as an element of "misappropriation." The undersigned concludes that properly read, the statute does not contain such a requirement.

Y&O cites the Fifth Circuit as holding that the elements of a misappropriation of trade secret claim in Texas include: "'(a) a[n] [existing] trade secret; (b) acquired through a breach of a confidential relationship or discovered by improper means; and (c) [the Defendant's] use [of] the trade secret without authorization from the plaintiff.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d

4

867, 874 (5th Cir. 2013) (citing *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)). The court's decision in *Wellogix* does not mandate the result urged by Y&O here for two reasons. First, the claims asserted in *Wellogix* were a common law claim for misappropriation and a statutory claim for theft of trade secrets under the Texas Theft Liability Act, not a claim under TUTSA as alleged by Sears. Second, TUTSA was not in effect when the Fifth Circuit decided *Wellogix* on May 15, 2013. The 83rd Texas Legislature enacted TUTSA in the spring of 2013, and the statute became effective on September 1, 2013. *See* Act of May 2, 2013, 83d Leg., R.S., ch. 10, 2013 Tex. Sess. Law Serv. 13 (West), eff. Sept. 1, 2013. Thus, the Fifth Circuit's decision in *Wellogix* is not binding on this Court with respect to the elements of a TUTSA claim such as the one asserted by Sears.

Likewise, Y&O cited other district court cases that repeat the *Wellogix* formulation of a misappropriation of trade secret claim without closely examining TUTSA's text. (ECF No. 57 at 2-4). *See Berge v. Republic Nat'l Inc.*, 3:17-CV-1367-D, 2017 WL 2267095, at *3 (N.D. Tex. May 17, 2018) (holding that a misappropriation claim requires "'disclosure or use of a trade secret of another without express or implied consent by [plaintiff]'"); *Garza-Selcer v. 1600 Pac. Subtenant, LLC*, 3:15-CV-03791-N, 2016 WL 11474103, at *5-6 (N.D. Tex. Aug. 30, 2016) (holding that under TUTSA, a misappropriation claim must allege that (1) a trade secret existed; (2) defendant acquired the trade secret through improper means; and (3) defendant disclosed or used the trade secret without plaintiff's consent); *TeamLogic, Inc. v. Meredith Grp. IT, LLC*, 3:16-CV-2452-BH, 2017 WL 1837114, at *6 (N.D. Tex. May 8, 2017) (holding that a misappropriation claim consists of four elements: (1) a trade secret existed; (2) the trade secret was acquired through breach of a confidential relationship or was discovered by improper means; (3) defendant used the trade secret without plaintiff's authorization; and (4) plaintiff suffered damages) (*see also Educ. Mgmt. Services v. Cadero*, SA-14-CA-587, 2014 WL 12586782, at *1 (W.D. Tex. Dec. 23, 2014) (same);

5

and *RealPage, Inc. v. Enterprise Risk Control, LLC*, 4:16-CV-00737, 2017 WL 3313729, at *9 (E.D. Tex. Aug. 3, 2017) (holding that under Texas law, plaintiff must show use without authorization, but need not show that the trade secret was used in interstate commerce). Y&O also cited *Halliburton Energy Services, Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 255 n.1 (Tex. App.—Dallas 2014, no pet.) for the proposition that a "[m]isappropriation of a trade secret does not require that defendant use the secret in exactly the form in which defendant received it; however, it must be substantially derived therefrom."

The analysis of TUTSA that most closely follows the text of the statute appears in *His Company, Inc. v. Stover*, 202 F. Supp. 3d 685 (S.D. Tex. 2016), vacated as moot, No. 4:15-CV-00842, 2016 WL 6134939 (S.D. Tex. Sep. 8, 2016). In *Stover*, Judge Harmon analyzed TUTSA and held that "use" is not a required element of a misappropriation claim if another path to liability exists under the statute. *Id.* at 690-95. In arriving at this holding, Judge Harmon stated that TUTSA displaced common law misappropriation. *Id.* at 691. *See also Demond v. Infiniti HR LLC*, No. 3:17-CV-1322-D, 2017 WL 3835951, n.12 (N.D. Tex. Aug. 11, 2017) (Ramirez, M.J.) (noting that pre-TUTSA cases that cite the common law elements of the tort are not instructive on the statutory requirements of a misappropriation of trade secret claim).

Judge Harmon explained further that the elements of a statutory misappropriation claim under TUTSA are as follows:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who:
>   (i) used improper means to acquire knowledge of the trade secret;
>   (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
>     (a) derived from or through a person who had utilized improper means to acquire it;

> > (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> > (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> (iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

*Stover*, 202 F. Supp. 3d at 692.

Judge Harmon noted that many district courts in Texas continue to "parrot the common law elements" of misappropriation "without regard to the text or intent of" TUTSA. *Id.* at 693. She reached a different result and "consider[ed] . . . [TUTSA's] text holistically, accounting for the 'full text, language as well as punctuation, structure, and subject matter.'" *Id.* (citing *Elgin Nursing & Rehab Ctr. v. U.S. Dept. of Health & Human Servs.*, 718 F.3d 488, 494 (5th Cir. 2013) (quoting *U.S. v. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc*, 508 U.S. 439, 455 (1993)). When considering TUTSA's full text and punctuation, Judge Harmon explained that there are "three disjunctive 'ors' and five semi-colons employed in the" misappropriation definition. *Id.*; *see also United States v. Reece,* CRIM. 12-00146, 2013 WL 3865067, at *6 (W.D. La. July 25, 2013) (punctuating a series of three paragraphs with a semi-colon after the first paragraph and a semi-colon and "or" after the second paragraph suggests that satisfying any one of the three paragraphs fulfills the defined term).

Judge Harmon concluded her analysis of TUTSA's text by explaining that there are six alternative paths to liability for a misappropriation claim under the statute. *Stover*, 202 F. Supp. 3d at 694. To support this conclusion, she relied on the fact that the "ors" in TUTSA appear after clauses 3(A), 3(B)(ii)(b), and 3(B)(ii)(c); and, that "[r]eading these three clauses as the only paths to liability would be a mistake." *Id.* This is because "'[i]t is a common practice to omit conjunctive and disjunctive connectors between all items in the series except the last two.'" *Id.* (citing *Tolbert*,

7

2009 WL 9072606, at *4 (quoting *Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 509 F. Supp. 2d 752 (W.D. Wis. 2007)) (internal quotation marks omitted). "'Thus, 'you must do A, B, and C' means 'you must do A and B and C.'" *Id.* "Guided by these rules of construction and in light of the numbering of the paragraphs and the placement of the 'ors' and semi-colons," Judge Harmon concluded that "use" is not a required element of a misappropriation claim under the TUTSA. *Stover*, 202 F. Supp. 3d at 690-95.

The undersigned agrees with the court's interpretation of TUTSA explained in *Stover*. Under this reading of the statute, Sears was not obligated to allege that Y&O used its trade secrets to state a valid claim for misappropriation. Instead, Sears could properly state a claim under TUTSA by alleging that Y&O acquired its trade secrets by improper means, which it has done. Consequently, Y&O's motion to dismiss on this ground should be denied.

  **2. Even if "Use" is a Necessary Element, Sears has Properly Pleaded that Y&O Used its Trade Secrets**.

Moreover, Sears alleged sufficient facts to claim that Y&O "used" its trade secret information without authorization even if "use" is a necessary element of a misappropriation claim. (ECF No. 56 at 10). For example, Sears alleged that "Y&O 'used' [its] trade secrets by taking control of them and holding them hostage while Y&O tried to coerce Sears to take over the lease after Faith Retail closed the store." (*Id.*). Although "use" is not a defined term under TUTSA, courts have defined it broadly to include any commercial use. *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 909, 916 (S.D. Tex. 2015) (holding that "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'"). Although the parties have not cited a case on the exact point that refusing to return trade secrets may qualify as "use," and the Court's research has not revealed such a case, it seems reasonable that refusal to return trade secrets in an effort to gain leverage over another party, such as what Sears alleges

Y&O did in this case, suffices as commercial use of trade secrets to the potential disadvantage of Sears. Under these unique circumstances, the undersigned concludes that refusing to return trade secrets constitutes "use." Accordingly, even if TUTSA requires Sears to allege that Y&O wrongfully used its trade secrets, Sears properly pleaded facts to support such an element.

## IV. CONCLUSION

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Y&O's Supplemental Motion to Dismiss (ECF No. 34) and its Rule 12(b)(6) Motion to Dismiss Sears' Misappropriation of Trade Secrets Claim (ECF No. 51).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on **November 29**, **2018**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE